611 A.2d 1245

**COMMONWEALTH of Pennsylvania**

v.

**Albert D. TILLERY, Appellant.**

Superior Court of Pennsylvania.

Argued March 12, 1992.

Filed June 30, 1992.

James A. Snell, Lebanon, for appellant.

Before POPOVICH, HUDOCK and HESTER, JJ.

**HESTER, Judge:**

In this appeal, Albert D. Tillery, appellant, contends that during his jury trial, the Commonwealth incorrectly used as incriminating evidence the fact that he had invoked his fourth amendment constitutional right against unreasonable searches and seizures. We agree with this contention, and we reverse and remand for a new trial.

The record reveals the following. Appellant was charged at two separate criminal docket numbers of one count each of receiving stolen property and conspiracy to commit retail theft. The evidence presented against appellant at the jury trial on this matter was succinctly summarized by the trial court:

The pertinent facts as set forth by the record and reviewed in the light most favorable to the Commonwealth, reveal the following. The charges against Defendant stem from an incident which occurred on September 20, 1989, at the Boscov's Department Store at 22nd and Cumberland Streets, Lebanon, Pennsylvania. Loretta Marie Kirst, a Boscov's security guard at the time, testified that [using a hidden camera,] she observed the Defendant and Kenneth Tillery [appellant's nephew,] enter the store on the date in question (N.T. 10). According to Kirst, while Defendant was standing next to Kenneth Tillery, Kenneth removed two watches from the jewelry department and placed them in his pocket (N.T. 11–12). The two men then left the store without paying for the merchandise (11–14).

Thirty minutes later, Kenneth Tillery returned to the store alone (N.T. 13). He went to the jewelry department and stole three additional watches (N.T. 13). William M. Reigle, II, a security guard at Boscov's was notified that Kenneth was leaving the premises with the merchandise (N.T. 22). Reigle followed Kenneth to an automobile in the store parking lot. The trunk of the vehicle was opened and the Defendant was sitting in the driver's seat (N.T. 22–23). Reigle identified himself as a Boscov's security guard and asked to speak to the Defendant (N.T.

23). Defendant ignored Reigle's request, rolled up the car window, and drove away (N.T. 23). Reigle then radioed Kirst who was inside the store and told her the license number of the vehicle and its general description (N.T. 25). He then instructed her to relay this information to the Lebanon City Police Department (N.T. 25).

Shortly thereafter, Brett A. Hopkins, a Cornwall Borough Police Sergeant, stopped the Defendant's vehicle on State Route 322 in Cornwall Borough, Lebanon County, Pennsylvania (N.T. 32). Hopkins asked the Defendant and Kenneth Tillery to step out of the automobile (N.T. 33). After a conversation with these men, the officer found two stolen wristwatches in a sock worn by Kenneth Tillery (N.T. 33). Both men were then arrested (N.T. 33). Since the automobile belonged to the Defendant, Hopkins requested permission from Defendant to search the vehicle (N.T. 34). This request was denied (N.T. 34). As a result, both individuals were taken into custody and a search warrant for the automobile was obtained (N.T. 34). When the trunk of the vehicle was opened, the police discovered three large duffel bags containing various items displaying price tags from numerous retail establishments (N.T. 35). Subsequently, some of these items were identified as having been stolen.

Trial court opinion, 6/10/91, at 3–4.

▮▮▮ Based on that evidence, the jury convicted appellant of receiving stolen property and conspiracy to commit retail theft. On July 24, 1991, the trial court imposed a sentence of twelve to twenty-four months imprisonment on each conviction, with the sentences to be served consecutively. Initially, we note that appellant mistakenly filed his appeals from the June 10, 1991 orders denying post-trial motions. In criminal cases, appeals must be taken from the final judgment of sentence. *E.g., Commonwealth v. Gumpert*, 354 Pa.Super. 595, 512 A.2d 699 (1986). However, since the judgments of sentence were imposed within thirty days of the date of the notice of appeal, June 25, 1991, this appeal is reviewable. *Commonwealth v. Hamaker*, 373

Pa.Super. 510, 512 n. 4, 541 A.2d 1141, 1142 n. 4 (1988) (premature appeal from order denying post-trial motions reviewed since judgment of sentence had been imposed); *Commonwealth v. Gumpert, supra* (same); Pa.R.A.P. 905(a).

▪ We address first appellant's contention that the evidence was insufficient to sustain his convictions because if he is entitled to relief on this basis, he must be discharged instead of awarded a new trial. Our standard of review in this context is well established.

> We begin with the familiar and well established admonition that our standard of review for challenges to the sufficiency of evidence is limited. We must determine whether, viewing all the evidence at trial, as well as all reasonable inferences to be drawn therefrom, in the light most favorable to the Commonwealth, the trier of fact could have found that each element of the offense was proven beyond a reasonable doubt. Both direct and circumstantial evidence receive equal weight when assessing the sufficiency of the evidence.... All reasonable inferences, consistent with the evidence, must be viewed in the Commonwealth's favor as verdict winner.

*Commonwealth v. Grekis,* 411 Pa.Super. 494, 504, 601 A.2d 1275, 1280 (1992) (citations omitted). It is within the province of the fact finder to determine the weight to be given to each witness's testimony and to believe all, part, or none of the evidence. *Commonwealth v. Parker,* 387 Pa.Super. 415, 564 A.2d 246 (1989).

▪ In the present case, appellant was convicted of conspiracy to commit retail theft. The crime of conspiracy is set forth in 18 Pa.C.S. § 903, which states:

> (a) *Definition of conspiracy.*—A person is guilty of conspiracy with another person or persons to commit a crime if with the intent of promoting or facilitating its commission he:
>
> > (1) agrees with such other person or persons that they or one or more of them will engage in conduct

which constitutes such crime or an attempt or solicitation to commit such crime; or

(2) agrees to aid such other person or persons in the planning or commission of such crime or of an attempt or solicitation to commit such crime.

We stated previously:

"The essence of criminal conspiracy is a common understanding, no matter how it came into being, that a particular criminal objective be accomplished." *Commonwealth v. Carter*, 272 Pa.Superior Ct. 411, 416 A.2d 523 (1979); *Commonwealth v. Anderson*, [265 Pa.Super. 494, 402 A.2d 546 (1979)]. By its very nature, the crime of conspiracy is frequently not susceptible of proof except by circumstantial evidence. *Commonwealth v. Carter, supra; Commonwealth v. Kwatkoski*, 267 Pa.Superior Ct. 401, 406 A.2d 1102 (1979). And although a conspiracy cannot be based upon mere suspicion or conjecture, *Commonwealth v. Anderson, supra*, a conspiracy "may be inferentially established by showing the relationship, conduct or circumstances of the parties, and the overt acts on the part of the co-conspirators have uniformly been held competent to prove that a corrupt confederation has in fact formed." *Commonwealth v. Carter, supra*, quoting *Commonwealth v. Horvath*, 187 Pa.Superior Ct. 206, 211, 144 A.2d 489, 492 (1958).

*Commonwealth v. Volk*, 298 Pa.Super. 294, 300–01, 444 A.2d 1182, 1185 (1982); *see also Commonwealth v. Lanager*, 360 Pa.Super. 578, 521 A.2d 53 (1987); *Commonwealth v. Ford*, 315 Pa.Super. 281, 461 A.2d 1281 (1983); *Commonwealth v. Lamb*, 309 Pa.Super. 415, 455 A.2d 678 (1983).

Among the circumstances which are relevant, but not sufficient by themselves, to prove a corrupt confederation are: (1) an association between alleged conspirators; (2) knowledge of the commission of the crime; (3) presence at the scene of the crime; and (4) in some situations, participation in the object of the conspiracy. The presence of such circumstances may furnish a web of evidence linking an accused to an alleged conspiracy beyond

a reasonable doubt when viewed in conjunction with each other and in the context in which they occurred.... *Commonwealth v. Olds*, 322 Pa.Super. 442, 447–48, 469 A.2d 1072, 1075 (1983), quoting *Commonwealth v. Lamb, supra; see also Commonwealth v. Grekis, supra.*

In the present case, appellant and his nephew acted in concert, appellant had knowledge of the commission of the crime since he viewed it, appellant was present at the scene, and he participated in his nephew's actions by driving the getaway car. In these circumstances, the existence of a conspiracy was established, and appellant's conviction of conspiracy to commit retail theft rests on sufficient evidence.

 To convict appellant of receiving stolen property, it was necessary for the Commonwealth to show three elements beyond a reasonable doubt. The evidence must establish that the property was stolen, that appellant was in receipt, possession or control of it, and that appellant had "guilty knowledge", that is, that he knew or had reason to know that the property was stolen....

*Commonwealth v. Grekis, supra,* 411 Pa.Super. at 505, 601 A.2d at 1280 (citations omitted).

In the present case, it was established that the property was stolen and further, that appellant had guilty knowledge since he observed the theft. Finally, we conclude that considering the totality of the circumstances, appellant exercised sufficient dominion or control over the goods to establish receipt of them. He owned and was driving the getaway car, in which the goods were located. He attempted to flee with the goods when approached by the security guard. Furthermore, the goods were located in a section of the car over which Kenneth did not have exclusive dominion and control. *See Commonwealth v. Walters,* 250 Pa.Super. 446, 378 A.2d 1232 (1977) (jury could infer that defendant had power to control stolen goods due to fact that he partially owned trailer where goods were found and was present in trailer at various times when goods were there);

*see also Commonwealth v. Shaffer,* 447 Pa. 91, 288 A.2d 727 (1972) (evidence was sufficient to establish driver's possession of stolen jewelry by exercising control over it when all occupants of car acted in concert and when jewelry was thrown from car in attempt to conceal it from police officers). *Compare Commonwealth v. Brady,* 385 Pa.Super. 279, 560 A.2d 802 (1989) (passenger in car that passenger did not own did not exercise dominion or control over goods located in trunk). Thus, the evidence was sufficient to sustain his conviction on the charge.

 Appellant also alleges that the Commonwealth improperly was allowed to introduce as evidence of guilt appellant's refusal to consent to the search of his car. We are constrained to agree with this contention. The record reveals that the Commonwealth made a specific motion to allow into evidence the fact that appellant refused to allow police to search his car solely to establish that he was guilty:

[DISTRICT ATTORNEY]: Judge, while we're here, I have one evidentiary matter to raise with the Court. I did research and couldn't find—it was a brief research, to be sure, but I didn't find anything. The vehicle in which Mr. Tillery was a passenger in which the numerous items were found—basically it's receiving stolen property as a result of retail theft. There were items taken from Boscov's that the camera operator saw taken. She radioed to the security guard who got a license plate to the car. The car had already left. Bret Hopkins spotted the car out on Route 322. When the car was stopped, the car was owned by Mr. Tillery, and when the car was stopped there was some items found on the person of Kenneth Tillery who was also in the car, and the police at that point asked Albert Tillery, can we search your car? And Mr. Tiller said, Absolutely not. I am not going to allow you to search my car.

We would like to bring that into evidence. It's not the same as a refusal to give a statement. *He was asked if he would consent to a search and he refused to consent*

*to the search, obviously, indicating he had something to hide, and we would like to bring that evidence in.* Notes of Testimony, 11/8/90, at 5–6 (emphasis added). Appellant objected strenuously to the allowance of such evidence.

The trial court allowed the evidence, which was as follows:

Q. Now. You said the car was owned by [appellant], did you ask [appellant] for permission to search the vehicle?

A. Yes, I did.

Q. And what was his response when you asked for his permission to search the vehicle?

A. He refused.

*Id.* at 34.

Pursuant to our holding in *Commonwealth v. Welch,* 401 Pa.Super. 393, 585 A.2d 517 (1991), it was error to allow this to be introduced into evidence. In *Welch,* we held that it was error to allow into evidence testimony that the defendant refused to permit a search of her bedroom without a warrant. Applying case law which holds that invocation of a fifth amendment right to remain silent or to counsel cannot be used as incriminating evidence, a panel of this court eloquently stated the following:

In *Commonwealth v. Haideman,* 449 Pa. 367, 296 A.2d 765 (1972), our Supreme Court held that it was reversible error to admit evidence of an accused's request for counsel and silence at arrest. . . .

[Similarly], in *Fowle v. United States,* 410 F.2d 48 (9th Cir.1969), the Ninth Circuit Court of Appeals stated, We simply cannot adopt an interpretation of the Fifth Amendment under which one exercising his right to remain silent upon and immediately after his arrest—a right which the Supreme Court has so earnestly sought to guarantee and preserve—is severely prejudiced by his recourse to that cherished right. It would be anomalous indeed if honorable law enforcement officers were required to elaborate upon the traditional fifth

amendment warning and advise arrested persons, in effect: If you say anything it may be used against you. You have the constitutional right to remain silent, but if you exercise it, that fact may be used against you. Although in the present case we are dealing with an assertion of a different constitutional right, the freedom from warrantless searches, we feel the same reasoning must apply to the assertion of that right.

As we read the various comments made by the courts regarding the assertion of one's Fifth Amendment right, the overriding tone is that it is philosophically repugnant to the extension of constitutional rights that assertion of that right be somehow used against the individual asserting it. Although the cases have discussed the Fifth Amendment right we see no reason to treat one's assertion of a Fourth Amendment right any differently. It would seem just as illogical to extend protections against unreasonable searches and seizures, including the obtaining of a warrant prior to implementing a search, and to also recognize an individual's right to refuse a warrantless search, yet allow testimony regarding such an assertion of that right at trial in a manner suggesting that it is indicative of one's guilt.

*Id.*, 401 Pa.Super. at 396–97, 585 A.2d at 518–19.

In the present case, the trial court refused to apply *Welch,* based on its position that appellant did not have the constitutional right to refuse to allow his car to be searched without a warrant. Even if we were to assume that appellant's car could be searched without a warrant, the court's refusal to apply *Welch* on that basis directly conflicts with the following language in that opinion:

The point of significance is that one should not be penalized for *asserting* a constitutional right. It is the assertion of a right that we must focus on. We believe that the assertion of a right cannot be used to infer the presence of a guilty conscience. *Thus, the actual entitlement to the right could be thought of as irrelevant to the point we are discussing.* We would think that the

same reasoning would apply even if the individual asserting the right had a mistaken belief that they were protected by a constitutional provision or were extended a right or protection when, in fact, they were not. The integrity of a constitutional protection simply cannot be preserved if the invocation or assertion of the right can be used as evidence suggesting guilt.

*Id.*, 401 Pa.Super. at 398, 585 A.2d at 520 (first emphasis in original, second emphasis added). Invocation of a constitutional right should not under any circumstances be used as evidence of guilt as it erases the very guarantees our constitution is designed to protect.

In accordance with the foregoing, the judgment of sentence is reversed and the case is remanded. Jurisdiction is relinquished.